UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRELL THOMAS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1424** |
| **MARLIN GUSMAN, ET AL.** | **SECTION "J"(3)** |

## REPORT AND RECOMMENDATION

Plaintiff, Darrell Thomas, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983. He named as defendants Orleans Parish Sheriff Marlin Gusman, Chief Earl Weaver, T. Barnes, and Warden Carlos Louque. In this lawsuit, plaintiff asserted various claims concerning the conditions of his confinement within the Orleans Parish Prison system.

Due to the cursory manner in which those claims were stated, the Court held a Spears hearing on January 13, 2012. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

### I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must

2

be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint and his Spears hearing testimony,[1] the undersigned recommends that the complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## II. Plaintiff's Claims

### A. Plumbing Problems

Plaintiff's first claim is that, while he was housed at the House of Detention of the Orleans Parish Prison system, the toilet in his cell was broken for an extended period of time. However, at the Spears hearing, he acknowledged that, during that time, he and the other inmates were taken to another cell's toilet when they needed to use the bathroom. He noted that he has since been

---

[1] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

3

transferred to the Conchetta facility within the same prison system. He stated that the toilet in his new cell does work, albeit slowly.

Even if plaintiff's allegations with respect to this claim are true, the claim must be dismissed. Although the toilet in the House of Detention was broken, he was given access to a working toilet when needed. The toilet in the Conchetta facility, while slow, is a working toilet. While these conditions are understandably aggravating, they simply are not unconstitutional. The Constitution does not protect inmates from "life's occasional inconveniences," such as plumbing problems. Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982); Scott v. Gusman, Civ. Action No. 10-2706, 2011 WL 666851, at *7 (E.D. La. Feb. 14, 2011); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *5 (E.D. La. May 11, 2010).

### B. Nonpayment for Services

Second, plaintiff claims that inmates are not paid for work they do at the jail. Again, even if this is true, it is not a constitutional violation. It has long been held that inmates are not legally entitled to be paid for their work. As the United States Fifth Circuit Court of Appeals has noted:

> Compelling an inmate to work without pay is not unconstitutional. The thirteenth amendment specifically allows involuntary servitude as punishment after conviction of a crime, and this Court has held that compensating prisoners for work is not a constitutional requirement but, rather, is by the grace of the state.

Murray v. Mississippi Department of Corrections, 911 F.2d 1167, 1167-68 (5th Cir. 1990) (citations and quotation marks omitted); see also Loving v. Johnson, 455 F.3d 562, 563 (5th Cir. 2006); Sparks v. Champagne, Civ. Action. No. 07-214, 2007 WL 1098885, at *3-4 (E.D. La. Apr. 11, 2007) (adopted by McNamara, J., on April 10, 2007). Therefore, this claim must also be dismissed.

### C. Lack of Supervision During Food Service

Third, plaintiff claims that meals are served by inmates unsupervised by guards. When asked what problems this causes, plaintiff stated that conflict arises because not all prisoners receive equal portions of food. Again, even if this true, it does not violate constitutional protections. There simply is no constitutional right to have food service performed or directly supervised by guards rather than prison trusties. Accordingly, this claim must likewise be dismissed.

### D. Inadequate Outside Recreational Opportunities

Fourth, plaintiff claims that prisoners must remain in their cells or dorms with only one hour per week of outside recreation. Again, even if this is accurate, it does not run afoul of the federal constitution.

Such an extended period of cell confinement does not pose an atypical, significant deprivation in a prison setting, and, therefore, does not rise to the level of a constitutional violation. See Argue v. Hofmeyer, 80 Fed. App'x 427, 429 (6th Cir. 2003); Hill v. Pugh, 75 Fed. App'x 715, 721 (10th Cir. 2003); Figueroa v. Dinitto, 52 Fed. App'x 522, 523 (1st Cir. 2002); Smith v. Romer, No. 96-1211, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997); Smith v. Beatty, No. 95-1493, 1996 WL 166270, at *1 (7th Cir. Apr. 5, 1996); Scott v. Gusman, Civ. Action No. 10-2706, 2011 WL 666851, at *3 (E.D. La. Feb. 14, 2011); Desdunes v. Gusman, Civ. Action No. 10-3210, 2010 WL 4365809, at *2 (E.D. La. Sept. 30, 2010), adopted, 2010 WL 4362822 (E.D. La. Oct. 21, 2010).

Moreover, even severe restrictions on or complete denials of outdoor recreation have been found to be constitutional. See, e.g., Chavis v. Fairman, No. 92-C-7490, 1994 WL 55719, at *5 (N.D. Ill. Feb. 22, 1994) ("Generally, even dramatic restrictions on outdoor exercise do not violate

the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity."), aff'd, 51 F.3d 275 (7th Cir. 1995); Scott, 2011 WL 666851, at *3; Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *9 (E.D. La. May 11, 2010); Broussard v. Phelps, Civil Action No. 86-2126, 1987 WL 18153, at *3 (E.D. La. Oct. 6, 1987) (no constitutional deprivation shown where prisoner was allowed outdoor recreation only twice in a seventeen month period in light of the fact that he was allowed to leave his cell for an hour each day and cell was large enough for indoor exercise).

For these reasons, this claim must also be dismissed.

### E. Unsanitary Conditions/Inadequate Cleaning Supplies

Plaintiff's fifth claim is that the prison is unsanitary and that the inmates are not given adequate cleaning supplies. This claim is likewise frivolous and must be dismissed.

Admittedly, there is a point beyond which a prison cell's conditions are so unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). However, the conditions alleged by plaintiff clearly do not rise to that level. The mere fact that there is mold, mildew, or fungus does not warrant relief. See, e.g., Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation."). Moreover, although prisons

6

should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, Civ. Action No. 09–2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); see also Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel").

As for the allegedly inadequate cleaning supplies, plaintiff testified at the Spears hearing that inmates are given cleaning supplies once per week. It is expressly noted that "[p]rison officials can constitutionally require inmates to keep their cells, living space and clothing clean by providing, or by requiring non-indigent inmates to purchase, cleaning supplies." Colby v. Gusman, Civ. Action No. 10-1004, 2010 WL 5477681, at *13 (E.D. La. Nov. 23, 2010), adopted, 2010 WL 5475617 (E.D.La. Dec. 28, 2010); Davis v. Gusman, Civ. Action No. 09-7195, 2010 WL 1727825, at *21 (E.D. La. Apr. 13, 2010), adopted, 2010 WL 1727821 (E.D. La. Apr. 28, 2010). Further, while plaintiff complains that the supplies provided do not include bleach, that is of no moment. Prisoners simply are not entitled to the cleaning supplies of their choice. See, e.g., Tallmore v. Hebert, Civ. Action No. 07–1220, 2008 WL 2597939, at *3 (W.D. La. May 28, 2008) ("There is simply no constitutional requirement that any specific type of disinfectant be used by prison officials.") (adopted by Doherty, J., on June 26, 2008); Ellis v. Crowe, Civ. Action No. 09–3061, 2010 WL 724158, at * 16 (E.D. La. Feb. 19, 2010) (rejecting a prisoner's claim that the cleaning supplies provided were not "the right stuff").

## F. Lack of Security

Plaintiff's sixth claim is that the jail lacks adequate security, with inmates being left alone for hours at a time. This claim also fails.

To the extent that plaintiff is contending that jail officials are negligent for failing to provide better security, that claim is not cognizable in this federal proceeding. See Eason v. Thaler, 73 F.3d 1322, 1329 n.3 (5th Cir. 1996) ("[N]egligence is not a theory for which liability may be imposed under section 1983."); see also Baker v. McCollan, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); Nesmith v. Taylor, 715 F.2d 194, 195 (5th Cir. 1983) ("It is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right.").

To the extent that plaintiff is attempting to assert a federal constitutional claim, it would be a failure-to-protect claim. See, e.g., Scott v. Gusman, Civ. Action No. 10-2706, 2011 WL 666851, at *5 (E.D. La. Feb. 14, 2011); Desdunes v. Gusman, Civ. Action No. 10-3210, 2010 WL 4365809, at *2 (E.D. La. Sept. 30, 2010), adopted, 2010 WL 4362822 (E.D. La. Oct. 21, 2010); Cruz v. Owens, Civ. Action No. 86-5325, 1986 WL 13478 (E.D. Pa. Nov. 26, 1986) (claim that inmate was attacked due to "poor security" analyzed as a failure-to-protect claim). It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). The United States Fifth Circuit Court of Appeals has held:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).

In the instant case, plaintiff does not allege that the purportedly inadequate security has ever placed *him* in harm's way, that *he* personally is particularly susceptible to being attacked, or that prison officials have been made aware of and were deliberately indifferent to *his* need for protection. Instead, he offers nothing more than his vague and conclusory allegation that security is inadequate, and it is clear that such allegations do not suffice to state a federal claim. See, e.g., Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); Sweat v. Corrections Corporation of America, No. 08-CV0917, 2009 WL 774454, at *2 (W.D. La. Mar. 24, 2009).

### G. Overcrowding

Plaintiff's seventh claim is that the jail is overcrowded, with the cells often filled with more inmates than they were designed to house. However, the mere fact that inmates are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation. See, e.g., Rhodes v. Chapman, 452 U.S. 337, 347-50 (1981); Castillo v. Cameron County, Texas, 238 F.3d 339, 354 (5th Cir. 2001) ("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional."); Price v. New Orleans Parish Criminal Sheriff, Civ. Action No. 09-3573, 2009 WL 2139702, at *3 (E.D. La. July 13, 2009); Thompson v. Stalder, Civ. Action No. 06-659, 2008 WL 874138, at *7 (M.D. La. April 1, 2008) ("[T]he law is clear that

9

the mere fact that an inmate may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension. It has been held that such a claim, without more, does not violate an inmate's constitutional rights."); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007). Therefore, plaintiff's allegations in this case are simply insufficient to state a cognizable, nonfrivolous overcrowding claim.

It is noted that plaintiff further alleges that, because of the overcrowding, he had no mattress for a period of time while in the House of Detention. However, deprivation of a mattress for a limited period of time also is not per se unconstitutional. See, e.g., Fischer v. Ellegood, 238 Fed. App'x 428, 433 (11th Cir. 2007); Stephens v. Cottey, 145 Fed. App'x 179 (7th Cir. 2005); Grissom v. Davis, 55 Fed. App'x 756 (6th Cir. 2003); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996); Schroeder v. Kaplan, No. 93-17123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995); Davis v. Gusman, Civ. Action No. 09-7195, 2010 WL 1727825, at *22-23 (E.D. La. Apr. 13, 2010), adopted, 2010 WL 1727821 (E.D. La. Apr. 28, 2010); Magee v. Crowe, Civ. Action No. 09-3142, 2010 WL 630011, at *9-10 (E.D. La. Feb. 19, 2010), McAllister v. Strain, Civ. Action No. 08-5174, 2009 WL 500560, at *2-3 (E.D. La. Feb. 25, 2009); Desroche v. Strain, 507 F. Supp. 2d 571, 579-81 (E.D. La. 2007). Here, plaintiff's allegations fall far short of what is required to state a cognizable, nonfrivolous claim for denial of a mattress.

For these reasons, these claims should likewise be dismissed.

### H. Clothing

At the Spears hearing, plaintiff complained that prisoners at state facilities are given three t-shirts, three pairs of underwear, and three pairs of socks, while prisoners are expected to pay for

such items in the Orleans Parish Prison system. Although this claim was not included in the complaint, it would be futile to allow him an opportunity to amend the complaint to add such a claim because the claim is frivolous. Plaintiff does not allege that he has no clothing; rather, he merely objects to the fact that he should have to pay for undergarments. However, the Constitution simply does not require that inmates be provided with free undergarments. Mayer v. Pima County Sheriff Department, No. 92-15584, 1993 WL 230196, at *3 (9th Cir. June 28, 1993); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *8 (E.D. La. May 11, 2010); Mosely v. Foti, Civil Action No. 86-4748, 1987 WL 9264 (E.D. La. Apr. 2, 1987).

## I. Lack of Law Library

Also at the Spears hearing, plaintiff testified that he does not have direct access to a law library at the jail. Although this claim also was not included in the complaint, it would again be futile to allow him an opportunity to amend the complaint to add such a claim because it, too, has no merit for the following reasons.

It is clear that prisoners have a constitutional right of meaningful access to the courts, including access to adequate law libraries or assistance from legally trained personnel needed to file nonfrivolous legal claims challenging their convictions or conditions of confinement. Bounds v. Smith, 430 U.S. 817, 828 (1977); Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). However, the Supreme Court in Bounds "did not create an abstract, freestanding right to a law library or legal assistance" in prison. See Lewis v. Casey, 518 U.S. 343, 351 (1996). Further, numerous cases over the years have established, and plaintiff readily acknowledged, that inmates within the Orleans Parish Prison system are allowed to request and borrow law books from a central law library. The

constitutional adequacy of that legal program, including the use of that law book loan system, was fully litigated in Howard v. Foti, No. 82-460 c/w 84-499, and monitored by this Court for many years. In that case, the Court fashioned an order to ensure that the prison law library and legal services program were constitutionally adequate, and it was determined that the Orleans Parish Prison system's law library and legal services program would be constitutionally adequate if the specifications set forth in the Court's order were met. Howard v. Foti, No. 82-460 c/w 84-499, 1989 WL 152715, at *1 (E.D. La. Dec. 14, 1989); see also Francis v. Gusman, Civ. Action No. 05-4065, 2006 WL 1985961, at *4 (E.D. La. June 21, 2006); Griffin v. Foti, Civ. Action No. 03-2670, 2004 WL 1687864, at *2 (E.D. La. July 27, 2004). This Court need not endlessly relitigate the very issue decided in Howard v. Foti, especially in that plaintiff has not alleged that either the facts or the law have changed since that case was decided. Therefore, this Court looks to that precedent and finds that plaintiff's claim is meritless.[2] See Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010).

Additionally, in any event, it is clear "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis, 518 U.S. at 351. In this case, plaintiff has not identified any prejudice he has suffered as result of not having direct access to a law library.

---

[2] "Stare decisis is the doctrine that demands adherence to judicial precedents." Meadows v. Chevron, U.S.A., Inc., 782 F. Supp. 1189, 1192 (E.D. Tex. 1991), aff'd in part, 990 F.2d 626 (5th Cir. 1993). The doctrine requires that like facts be given like treatment in a court of law. See Taylor v. Charter Medical Corp., 162 F.3d 827, 832 (5th Cir. 1998). Stare decisis is not narrowly confined to parties and their privies; rather, when its application is appropriate, the doctrine is broad in impact, reaching strangers to earlier litigation. Equal Employment Opportunity Commission v. Trabucco, 791 F.2d 1, 2 (1st Cir. 1986).

## J. Lack of Programs for Convicted Prisoners

Also at the Spears hearing, plaintiff testified that there are no programs available for prisoners to better themselves. Again, this claim was not included in plaintiff's complaint. Nevertheless, once again, plaintiff need not be granted leave to amend the complaint to assert such a claim because the claim is frivolous. Simply put, there is no constitutional right to such educational or rehabilitative services or programs in prison. Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *10 (E.D. La. Mar. 8, 2010); Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *2-3 (E.D. La. Oct. 29, 2009); Oglesby v. Gusman, Civ. Action No. 09-3593, 2009 WL 3254145, at *2 (E.D. La. Oct. 7, 2009); Sampson v. Corrections Corporation of America, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009); Wilbon v. Gusman, Civ. Action No. 05-2443, 2006 WL 2119458, at *2 (E.D. La. July 25, 2006).

## K. Equal Protection

At the Spears hearing, it was clear that the crux of plaintiff's complaints is that the conditions within the Orleans Parish Prison system are not as good as those in state facilities operated by the Louisiana Department of Public Safety and Corrections. Out of an abundance of caution, the Court lastly notes that, even if plaintiff meant this to be interpreted as an equal protection challenge, he has not stated a proper claim. To properly state an equal protection claim, a plaintiff's allegations must have two prongs: (1) "that he received treatment different from that received by similarly situated individuals" and (2) "that the unequal treatment stemmed from a discriminatory intent."

Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001). Here, plaintiff fails to satisfy either of those prongs.

As to the first prong, plaintiff's allegations are clearly insufficient. As noted, plaintiff compares himself and the conditions of his confinement to prisoners in Louisiana state prisons and the conditions of their confinement. However, that is not the relevant comparison for equal protection purposes. Because plaintiff has no right to be housed in a state prison,[3] any comparison to prisoners in Louisiana state prisons and the conditions of their confinement is irrelevant. Rather, for equal protection purposes, the only relevant comparison is whether he is treated differently than persons "similarly situated," and the only such persons in that category are his fellow inmates within the Orleans Parish Prison system. See Woods v. Collins, No. 95-10432, 1995 WL 581879, at *2 (5th Cir. Sept. 21, 1995); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Clark v. Foti, No. 94-30615, 1995 WL 136127, at *2 (5th Cir. Mar. 8, 1995); Davis v. St. Charles Parish Corr. Center,

---

[3] Louisiana law expressly provides: "[A]ny individual subject to confinement in a state adult penal or correctional institutional shall be committed to the Louisiana Department of Corrections and not to any particular institution within the jurisdiction of the department." La.Rev.Stat.Ann. § 15:824(A). State law also expressly provides that, when necessary, state prisoners may be confined in parish jails. La.Rev.Stat.Ann. § 15:824(B)(1)(a).

Further, placement of state prisoners is a matter left to the discretion of state officials. A prisoner has no constitutional right springing from the Constitution itself or from any protected liberty or property interest arising from state law to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *3 (E.D. La. Mar. 8, 2010); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *3 (E.D. La. Oct. 29, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *8 n.12 (E.D. La. May 10, 2007).

Civ. Action No. 10-98, 2010 WL 890980, at *6 (E.D. La. Mar. 8, 2010); Hill v. Stephens, Civ. Action No. 08-5233, 2009 WL 1808596, at *2 (E.D. La. Jun. 18, 2009); Hymel v. Champagne, No. 07-450, 2007 WL 1030207, at *2 (E.D. La. Mar. 28, 2007); Santos v. Louisiana Department of Corrections Secretary, Civ. Action No. 95-4215, 1996 WL 89260, at *5 (E.D. La. Feb. 28, 1996). Because plaintiff does not allege that he has been treated differently than those prisoners, he has not stated a cognizable equal protection claim.

Further, his claim also fails at the second prong of the analysis. As to that prong, "[d]iscriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of ... the adverse impact it would have on an identifiable group." United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992); see also Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001). Plaintiff does not allege that the different treatment here stems from an intent to discriminate against him due to his membership in any identifiable group. "[I]n the absence of an allegation of discriminatory motive, a mere claim of inconsistent outcomes in particular, individual instances furnishes no basis for relief based on the denial of equal protection." Stevenson v. Louisiana Board of Parole, No. 01-30252, 2001 WL 872887, at *1 (5th Cir. July 11, 2001).

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

15

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[4]

New Orleans, Louisiana, this twenty-seventh day of January, 2012.

 _Daniel E. Knowles, III_
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.